## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **ANDY WEISS a.k.a ANDREW WEISS** | Case No. |
| **and** | |
| **BETTY WEISS,** | **TRIAL BY JURY DEMANDED** |
| Plaintiffs, | |
| vs. | |
| **WELLS FARGO BANK, N.A.,** | |
| Defendant. | |

---

### COMPLAINT FOR DAMAGES

---

Plaintiffs Andy Weiss a.k.a. Andrew Weiss and Betty Weiss, through counsel, for their Complaint against Defendant Wells Fargo Bank, N.A., state:

### PARTIES, JURISDICTION, AND VENUE

1.     Plaintiffs Andy Weiss a.k.a. Andrew Weiss and Betty Weiss (collectively "Plaintiffs" or the "Weisses") are the owners of residential real property, located at and commonly known as 9319 Kostner Avenue, Skokie, IL 60076 (the "Home") which they have maintained and occupied as their primary, principal residence at all this relevant to the Complaint.

2.     Wells Fargo Bank, N.A., ("Wells Fargo") is a national bank with its principal place of business located in South Dakota. Wells Fargo owns and maintains numerous bank branches in Illinois and is authorized to do business in Illinois.

3.      Wells Fargo is the current servicer of a note (the "Note") and of a mortgage on the Home that secures said note (the "Mortgage") (collectively, the "Loan") each executed by Plaintiffs. ***A copy of the Loan documents is attached as Exhibit 1.***

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

5.      This Court has supplemental jurisdiction to hear any and all state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

6.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

7.      This action is primarily filed to enforce regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X").

8.      In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

9.      Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

10.      Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for

purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

11.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

12.     Plaintiffs assert claims for relief against Wells Fargo for breaches of the specific rules under Regulation X as set forth, *infra*.

13.     Plaintiffs have a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

14.     Plaintiffs also assert state law claims for relief against Wells Fargo for breach of contract and for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") 815 ILCS 505/1 *et seq.*

## FACTUAL BACKGROUND

15.     On or about August 24, 2012, Plaintiffs filed a petition for relief under Chapter 13 of Title 11 of the United States Code in the Bankruptcy Court for the Northern District of Illinois, captioned *In re Andy and Betty Weiss*, and assigned Case No. 12-33688 (the "Bankruptcy").

16.     During the course of the Bankruptcy, Plaintiffs filed an adversary proceeding captioned *Andy Weiss, et al. v. Wells Fargo Bank, N.A.*, assigned Case No. 16-00685 (the "Adversary").

17.     On or about June 23, 2017, Plaintiffs received a discharge in the Bankruptcy and the Bankruptcy was subsequently closed on June 30, 2017.

18.     On or about March 16, 2018, Plaintiffs and Wells Fargo entered into a Settlement Agreement (the "Settlement") and an Agreed Dismissal Order in the Adversary was entered on March 22, 2018. *A copy of the Settlement is attached as Exhibit 2.*

19.     Pursuant to the terms of the Settlement, Wells Fargo was required to:

    a.    Reverse all amounts applied to Plaintiffs' outstanding escrow balance;

    b.    Credit all real estate tax refunds received or to be received from the Cook County Treasurer for duplicate tax payments relating to real estate taxes for the 2014, 2015, and 2016 tax years paid in 2015, 2016, and 2017;

    c.    Apply a credit to the Loan in the amount of $7,434.17 to bring the Loan current as of February 1, 2018;

    d.    Refund any funds remaining in suspense after the escrow balance was paid in full;

    e.    Remove the escrow account for the Loan; and,

    f.    Remit payment to Plaintiffs in the amount of $12,907.57 payable to "Bach Law Offices, In Trust" within twenty-one days of the execution of the Agreement (the "Settlement Payment").

*See Exhibit 2.*

20.     Pursuant to the Settlement, the Adversary was closed on or about March 22, 2018.

21.     On or about April 19, 2018, Plaintiffs' former Bankruptcy counsel, Merle L. Royce ("Royce") filed a *Notice of Attorney's Lien* in the Adversary.

22.     On or about April 19, 2018, Royce filed a *Notice of Motion* and *Motion to Enforce Attorney's Lien* in the adversary (the "Lien Motion"), which was denied on or about April 26, 2018.

23.     Any lien referenced in the Lien Motion or otherwise filed by Royce is invalid due to defects or has otherwise expired.

24.     On or about May 4, 2018, Wells Fargo tendered the Settlement Payment in the amount of $12,907.57 to its counsel, Mayer Brown LLP, who, to date, has not disbursed the funds to the Weiss's or their current counsel despite requests for the same.

25.     On or about August 24, 2018, Plaintiff, through counsel, sent three pieces of correspondence to Wells Fargo via Certified Mail each captioned "Request for Information Pursuant to 12 CFR § 1024.36" consisting of:

    a.     Correspondence requesting information related to the Loan including:

        i.     The owner and/or investor of the Loan;

        ii.    The value of and any property valuations of the Home;

        iii.   The date and amount of the last payment on the Loan;

        iv.    Reinstatement figures for the Loan if Wells Fargo deemed the Loan to be delinquent;

        v.     A copy of the most recent periodic statement for the Loan;

        vi.    A copy of any previous loss mitigation agreements regarding the Loan; and,

        vii.   A loss mitigation application ("RFI #1");

      b.      Correspondence requesting the loss mitigation options and programs that are available for the Loan ("RFI #2"); and,

      c.      Correspondence requesting information related to the Loan including:

          i.      A statement of the amount necessary to pay the Loan in full; and,

          ii.      A transaction history for the life of the Loan ("RFI #3").

***Copies of RFI #1, RFI #2, and RFI #3 (collectively, the "RFIs") are attached as Exhibits 3, 4, and 5, respectively.***

26.      Plaintiffs sent the RFIs to the address designated by Wells Fargo for the receipt of notices of error pursuant to 12 C.F.R. § 1024.35(c) and requests for information pursuant to 12 C.F.R. § 1024.36(b) (the "Designated Address") via Certified Mail [Receipt Nos. 70170190000070840811, 70170190000070840835, and 70170190000070840828, respectively].

***Copies of the executed return receipts for each of the RFIs are attached as Exhibit 6.***

27.      Wells Fargo received RFI #1 and RFI #2 at the Designated Address on August 26, 2018. *See Exhibit 6.*

28.      Wells Fargo received RFI #3 at the Designated Address on August 28, 2018. *See Exhibit 6.*

29.      Wells Fargo failed to provide written notice to Plaintiffs containing or consisting of a substantive response to any of the requests contained within the RFIs within the applicable statutory deadlines.

30.      On or about October 11, 2018, Plaintiffs, through counsel, sent a notice of error to Wells Fargo at the Designated Address via Certified Mail [Receipt No. 70180360000143333475]

captioned "Notice of Error under 12 CFR Section 1024.35" ("NOE #1"). ***A copy of NOE #1 is attached as Exhibit 7***.

31.     Wells Fargo received NOE #1 at the Designated Address on October 15, 2018. ***A copy of the tracking information for NOE #1 from the website for the United States Postal Service (USPS) (www.usps.com) is attached as Exhibit 8.***

32.     Through NOE #1, Plaintiffs alleged that Wells Fargo committed errors regarding their Loan pursuant to 12 C.F.R. § 1024.35(b)(11) by: (1) Failing to provide timely, substantive responses to any of the RFIs; and, (2) claiming in an Internal Revenue Service (IRS) Form 1098 filed with the that in and for the 2017 tax year that Plaintiffs paid $16,265.37 in escrow amounts and $13,249.84 in interest despite Plaintiffs not having an escrow account pursuant to the Settlement and the stated interest amount being for the years 2015 through 2017 collectively, not 2017. *See Exhibit 7*.

33.     Through NOE #1, Plaintiffs demanded a refund of any amounts held in escrow and for the filing of a corrected Form 1098 with the IRS. *See Exhibit 7*.

34.     Wells Fargo sent two (2) pieces of correspondence dated October 31, 2018 and December 3, 2018, respectively, in response to NOE #1 ( collectively, "Response to NOE #1"). ***A copy of Response to NOE #1 is attached as Exhibit 9.***

35.     Through Response to NOE #1, Wells Fargo failed to state whether or not an error occurred regarding the alleged failure to respond to any of the RFIs. *See Exhibit 9*.

36.     Further, through Response to NOE #1, Wells Fargo did not fully correct the alleged error regarding their failure to respond to the RFIs as they did not provide all of the

information requested through the same or otherwise provide a valid reason as to why they were not required to do so pursuant to 12 C.F.R. § 1024.36(f).

37.     Specifically, through Response to NOE #1, Wells Fargo failed to provide:

a.      The identity of the owner and/or investor for the Loan as originally requested through RFI #1;

b.      Any information related to the value of or any valuations of the Home performed by Wells Fargo as originally requested through RFI #1;

c.      Information related to the loss mitigation options and programs available on the Loan as originally requested through RFI #2; and,

d.      A statement of the amount necessary to pay the Loan in full within the applicable timeframe as originally requested through RFI #3.

*See Exhibits 3, 4, 5, and 9.*

38.     Through Response to NOE #1, Wells Fargo claimed that it was not required to respond to the remaining requests contained in the RFIs because "your remaining request [sic] are too broad." *See Exhibit 9*.

39.     Through Response to NOE #1, Wells Fargo further claimed that on November 13, 2018 they "sent a new Internal Revenue Service (IRS Form 1098) for 2016, 2016, and 2017". *See Exhibit 9*.

40.     The "corrected" versions of the IRS Form 1098 for the 2015, 2016, 2017 tax years referenced in Response to NOE #1, were not filed with the IRS, which was confirmed through conversations Plaintiffs' counsel had with the IRS and still contained errors in the amount of interest stated.

41.     On or about February 25, 2019, Plaintiffs, through counsel, sent a notice of error to Wells Fargo at the Designated Address via Certified Mail [Receipt No. 70170190000070840842] captioned "Notice of Error under 12 CFR Section 1024.35" ("NOE #2"). *A copy of NOE #2 is attached as Exhibit 10*.

42.     Wells Fargo received NOE #2 at the Designated Address on February 27, 2019. *A copy of the tracking information for NOE #2 from the website for the United States Postal Service (USPS) ([www.usps.com](www.usps.com)) is attached as Exhibit 11.*

43.     Through NOE #2, Plaintiffs alleged that Wells Fargo committed errors regarding their Loan pursuant to 12 C.F.R. § 1024.35(b)(11) by: (1) Failing to account for $7,434.17 in unapplied funds on the Loan; (2) failing to properly correct the and file the corrected versions of IRS Form 1098 for the 2015, 2016, and 2017 tax years as previously demanded through NOE #1; (3) for issuing an IRS Form 1099 for the 2018 tax year in the amount of $12,907.57 for the Settlement Payment despite such funds not being issued to Plaintiffs and still effectively being in Wells Fargo's possession through their own counsel; and (4) having significant accounting discrepancies between the IRS Form 1098 for 2018 and the monthly periodic statements for the Loan. *See Exhibit 10*.

44.     Through NOE #2, Plaintiffs further demanded a detailed accounting of funds that were ever placed in a suspense account as such relates to the unapplied funds on the Loan, a retraction of the IRS Form 1099 issued to Plaintiffs for the Settlement Payment,an accounting for the Loan so as to provide for the discrepancy in the accounting between the IRS Form 1098 for 2018 compared to the periodic statements for the Loan, and for corrected versions of IRS Form 1098 to be filed. *See Exhibit 10*.

45.     Wells Fargo requested an extension of time within which to respond to NOE #2, however, even with such extension, Wells was required to respond to NOE #2 within forty-five (45) business days of February 27, 2019, or May 1, 2019.

46.     Wells Fargo did not send any substantive written response to NOE #2 to Plaintiffs on or before May 1, 2019, instead waiting until at least May 6, 2019 to send correspondence in response to NOE #2 ("Response to NOE #2"). *A copy of Response to NOE #2 is attached as Exhibit 12.*

47.     Regardless Response to NOE #2 was deficient in responding to NOE #2. *See Exhibits 10 and 12.*

48.     Wells Fargo, through Response to NOE #2, wholly failed to address the error alleged in NOE #2 concerning their failure to properly correct and file the corrected versions of IRS Form 1098 in response to NOE #1. *See Exhibits 10 and 12.*

49.     Regarding the incorrect IRS Form 1098 for 2018, Wells Fargo admitted that an error occurred, but failed to fully correct the error and state the date of the correction instead merely *offering* to do so by either filing a corrected IRS Form 1098 or to defer the correction until 2019 despite Plaintiffs explicitly having asked for a corrected versions of IRS Form 1098 to be filed through NOE #2. *See Exhibits 10 and 12.*

50.     Wells Fargo, through Response to NOE #2, also failed to properly address the alleged error in NOE #2 regarding the IRS Form 1099 for the Settlement Payment merely claiming that "[a]s the funds have been issued we are unable to retract the 1099 at this time" despite Wells Fargo's counsel, and not Plaintiffs, still retaining possession of such funds thereby exposing Plaintiffs to tax liabilities for a benefit they have not received. *See Exhibits 10 and 12.*

51.     Lastly, as to the alleged error concerning unapplied funds, Wells Fargo, through Response to NOE #2, merely stated that there was no such error as "[t]here is currently no funds in the unapplied funds account" without further explanation and without providing the transaction history for the suspense account, as explicitly requested in support of this. *See Exhibits 10 and 12*.

<u>**IMPACT AND DAMAGE**</u>

52.     Despite Plaintiffs and Wells Fargo (collectively, the "Parties") agreeing to the Settlement and the Adversary having been dismissed roughly fifteen (15) months prior to the filing of this Complaint, because of Wells Fargo's improper actions Plaintiffs still have not received a single penny from the Settlement Payment, have remained unable to properly file their taxes from 2015 onward, and have been exposed to tax liability for the Settlement Payment despite those funds still functionally being held by Wells Fargo.

53.     Wells Fargo's improper actions of have caused Plaintiffs to suffer from further damages including:

a.     Legal fees and expenses to submit requests for information and notices of error to Wells Fargo in an attempt to have them act in compliance with the Settlement and in accordance with state and federal law and guidelines; and,

b.     Severe emotional distress driven by fear and uncertainty in their financial well-being and their obligations which has resulted in loss of sleep, anxiety, depression, embarrassment, significant conflict in their marital relationship, and other significant harm.

54. Throughout this entire frustrating ordeal, Plaintiffs have simply wanted to be able to enjoy the benefit of the Settlement, be able to properly and accurately pay their taxes, and be able to have certainty in their financial well being and obligations moving forward and have the benefits of the "fresh financial start" the Bankruptcy was to afford them.

## ADDITIONAL EVIDENCE OF A PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY WELLS FARGO

55. Wells Fargo's actions are part of a pattern and practice of behavior in violation of the Michels' rights and in abdication and contravention of Wells Fargo's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

56. At the time of the filing of this Complaint, consumers nationwide have filed at least Eight Thousand Thirty (8,030) consumer complaints against Wells Fargo, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (https://www.consumerfinance.gov/data-research/consumer-complaints/).

57. Plaintiffs have reviewed the CFPB's consumer complaint database and have identified other alleged RESPA violations by Wells Fargo against other borrowers. In particular, Plaintiffs have reviewed the fifteen (15) consumer complaint narratives attached hereto and identified as *Group Exhibit 13* concerning.the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account" related to mortgages. The date, details, and a narrative disclosed by each consumer is set forth in each complaint. The complaints evidence conduct which demonstrates that Well Fargo has engaged in a pattern and practice of violating RESPA with respect to other borrowers.

<u>**COUNT ONE:**</u>

**MULTIPLE VIOLATIONS OF 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E)**

**(Failure to properly respond to requests for information)**

58.     Plaintiffs restate and incorporate their statements and allegations contained in paragraphs 1 through 57 in their entirety, as if fully rewritten herein.

59.     12 C.F.R. § 1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

60.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

61.     12 C.F.R. § 1024.36(d)(1) provides, in relevant part, that:

[A] servicer must respond to an information request by either:
  (i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or
  (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

62.     Furthermore, 12 C.F.R. § 1024.36(d)(2)(i) provides that:

A servicer must comply with the requirements of paragraph (d)(1) of this section:

(A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and

(B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

63.    Each of the RFIs met the definition of a request for information. See *Exhibits 3, 4, and 5*.

64.    Plaintiffs sent each of the RFIs to Wells Fargo at the Designated Address and Wells Fargo received each of the RFIs at the Designated Address within a week of mailing. See *Exhibits 3, 4, 5, and 6.*

65.    Pursuant to 12 C.F.R. § 1024.36(d)(2)(i)(B), Wells Fargo was generally required to provide written correspondence to Plaintiffs in response to each of the RFIs "not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receive[d] the information request", as contained in each of the RFIs,  in compliance with the requirements of 12 C.F.R. § 1024.36(d)(1).

66.    Further, pursuant to 12 C.F.R. § 1024.36(d)(2)(i)(A), Wells Fargo was required to provide written correspondence to Plaintiffs in response to the request for the identity of and contact information for the owner and/or investor of the Loan as requested through RFI #1 "not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receive[d the] information request" in compliance with the requirements of 12 C.F.R. § 1024.36(d)(1). *See Exhibit 3*.

67.    Wells Fargo failed to provide written notice to Plaintiffs containing or consisting of a substantive response to any of the requests contained within the RFIs as required by 12

C.F.R. § 1024.36(d)(1) within the applicable statutory deadlines contained in 12 C.F.R. § 1024.36(d)(2)(i).

68.     Because of Wells Fargo's failure to respond to each of the RFIs, Plaintiffs incurred fees and costs to have counsel prepare and send NOE #1 on their behalf to Wells Fargo at the Designated Address, which would not have been necessary but for Wells Fargo's failure to properly respond to the RFI. *See Exhibit 7*.

69.     Wells Fargo's actions, in failing to provide proper written correspondence to Plaintiffs in response to each of the RFIs by their respective response deadlines, constitute *at least three (3) willful violations of 12 C.F.R. § 1024.36(d)*, one for each of the RFIs to which Wells Fargo failed to properly respond.

70.     Wells Fargo's actions are believed to be a pattern and practice of behavior in conscious disregard for Plaintiffs' rights.

71.     As a result of Wells Fargo's actions, Wells Fargo is liable to Plaintiffs for actual damages, statutory damages, costs, and attorneys' fees, including, but not limited to incurring costs and fees for the preparation and mailing of NOE #1 which would not have been necessary but for Wells Fargo's failure to properly respond to each of the RFIs.

## <u>COUNT TWO:</u>
## MULTIPLE VIOLATIONS OF 12 C.F.R. § 1024.35(e), 12 U.S.C. §§ 2605(k)(1)(C) and (E)

### (Failure to timely and properly respond to notices of error)

72.     Plaintiffs restate and incorporate their statements and allegations contained in paragraphs 1 through 57 in their entirety, as if fully rewritten herein.

73.     12 C.F.R. § 1024.35(a) provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and

that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

74.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

75.     12 C.F.R. § 1024.35(e)(1)(i) provides that a servicer must respond to a notice of error by either:

> (A)  Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
>
> (B)  Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

76.     12 U.S.C. § 2605(k)(1)(C) provides that "[a] servicer of a federally related mortgage shall not … fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."

77.     Standard servicer duties are those "typically undertaken by servicers in the ordinary course of business", are not limited to duties that constitute "servicing", and include:

> [D]uties to comply with investor agreements and servicing program guides, to advance payments to investors, to process and pursue mortgage insurance claims, to monitor coverage for insurance (e.g., hazard insurance), to monitor tax delinquencies, to

> respond to borrowers regarding mortgage loan problems, to report data on loan performance to investors and guarantors, and to work with investors and borrowers on options to mitigate losses for defaulted mortgage loans.

78 F.R. 10696, 10739.

78.     12 U.S.C. § 2605(k)(1)(E) provides that "[a] servicer of a federally related mortgage shall not … fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

79.     NOE #1 and NOE #2 (collectively, the "NOEs") each meet the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). *See Exhibits 7 and 10.*

80.     Plaintiffs sent each of the NOEs to Wells at the Designated Address and Wells Fargo received each of the NOEs at the Designated Address within a week of mailing. *See Exhibits 7, 8, 10, and 11.*

81.     Through Response to NOE #1, Wells Fargo failed to state whether or not an error occurred regarding the alleged failure to respond to any of the RFIs. *See Exhibit 9.*

82.     Further, through Response to NOE #1, Wells Fargo did not fully correct the alleged error regarding their failure to respond to the RFIs as they did not provide all of the information requested through the same or otherwise provide a valid reason as to why they were not required to do so pursuant to 12 C.F.R. § 1024.36(f).

83.     Specifically, through Response to NOE #1, Wells failed to provide:

    a.     The identity of the owner and/or investor for the Loan as originally requested through RFI #1;

      b.      Any information related to the value of or any valuations of the Home performed by Wells Fargo as originally requested through RFI #1;

      c.      Information related to the loss mitigation options and programs available on the Loan as originally requested through RFI #2; and,

      d.      A statement of the amount necessary to pay the Loan in full within the applicable timeframe as originally requested through RFI #3.

*See Exhibits 3, 4, 5, and 9.*

84.      Through Response to NOE #1, Wells Fargo claimed that it was not required to respond to the remaining requests contained in the RFIs because "your remaining request [sic] are too broad" despite such requests not being too broad and bearing no resemblance to the types of requests that the CFPB has provided for illustrative purposes through 12 C.F.R. § 1024.36(f)(1)(iv) and the Official Interpretation of the CFPB for such paragraph.[1] *See Exhibit 9.*

85.      Through Response to NOE #1, Wells Fargo further claimed that on November 13, 2018 they "sent a new Internal Revenue Service (IRS Form 1098) for 2016, 2016, and 2017" but such "corrected" versions of IRS Form 1098 for the 2015, 2016, 2017 tax years referenced in,

---

[1] "*Examples of overbroad or unduly burdensome requests for information.*The following are examples of requests for information that are overbroad or unduly burdensome:

    i.   Requests for information that seek documents relating to substantially all aspects of mortgage origination, mortgage servicing, mortgage sale or securitization, and foreclosure, including, for example, requests for all mortgage loan file documents, recorded mortgage instruments, servicing information and documents, and sale or securitization information and documents;

    ii.  Requests for information that are not reasonably understandable or are included with voluminous tangential discussion or assertions of errors;

    iii.  Requests for information that purport to require servicers to provide information in specific formats, such as in a transcript, letter form in a columnar format, or spreadsheet, when such information is not ordinarily stored in such format; and

    iv.  Requests for information that are not reasonably likely to assist a borrower with the borrower's account, including, for example, a request for copies of the front and back of all physical payment instruments (such as checks, drafts, or wire transfer confirmations) that show payments made by the borrower to the servicer and payments made by a servicer to an owner or assignee of a mortgage loan."

Supplement I to Part 1024--Official CFPB Interpretations, comment 36(f)(1)(iv), 78 FR 10695 (Feb. 14, 2013).

were not filed with the IRS and still contained errors in the amount of interest stated. *See Exhibit 9.*

86.     Wells Fargo did not fully correct the errors which they claimed to in Response to NOE #1 or otherwise failed to reasonably investigate each of the errors alleged through NOE #1. *See Exhibits 7 and 9.*

87.     Response to NOE #1 failed to meet the requirements of 12 C.F.R. § 1024.35(e)(1)(i)(A) or 12 C.F.R. § 1024.35(e)(1)(i)(B). *See Exhibit 9.*

88.     Because of Wells Fargo's failure to properly respond to noe #1, Plaintiffs incurred fees and costs to have counsel prepare and send NOE #1 on their behalf to Wells Fargo at the Designated Address, which would not have been necessary but for Wells Fargo's failure to properly respond to the RFI. *See Exhibit 7.*

89.     As Wells Fargo requested an extension of time to respond to NOE #2, pursuant to 12 C.F.R. §§ 1024.35(e)(3)(i)(C) and 1024.35(e)(3)(ii), Wells Fargo was required to properly respond to NOE #2 within forty-five days excluding legal public holidays, Saturdays, and Sundays of February 27, 2019, or on or before May 1, 2019. *See Exhibit 11.*

90.     Wells Fargo did not send Response to NOE #2 until May 6, 2019, five (5) calendar days beyond the deadline established by 12 C.F.R. §§ 1024.35(e)(3)(i)(C) and 1024.35(e)(3)(ii), *See Exhibits 11 and 12.*

91.     Regardless Response to NOE #2 was deficient in responding to NOE #2. *See Exhibits 10 and 12.*

92.     Wells Fargo, through Response to NOE #2, wholly failed to address the error alleged in NOE #2 concerning their failure to properly correct and file the corrected versions of IRS Form 1098 in response to NOE #1. *See Exhibits 10 and 12*.

93.     Regarding the incorrect IRS Form 1098 for 2018, Wells Fargo admitted that an error occurred, but failed to fully correct the error and state the date of the correction instead merely *offering* to do so by either filing a corrected IRS Form 1098 or to defer the correction until 2019 despite <u>Plaintiffs explicitly having asked for a corrected versions of IRS Form 1098 to be filed through NOE #2</u>. *See Exhibits 10 and 12*.

94.     Wells Fargo, through Response to NOE #2, also failed to properly address the alleged error in NOE #2 regarding the IRS Form 1099 for the Settlement Payment merely claiming that "[a]s the funds have been issued we are unable to retract the 1099 at this time" despite Wells Fargo's counsel, <u>and not Plaintiffs,</u> still retaining possession of such funds thereby exposing Plaintiffs to tax liabilities <u>for a benefit they have not received</u>. *See Exhibits 10 and 12*.

95.     Lastly, as to the alleged error concerning unapplied funds, Wells Fargo, through Response to NOE #2, merely stated that there was no such error as "[t]here is currently no funds in the unapplied funds account" without further explanation and without providing the transaction history for the suspense account, as explicitly requested in support of this. *See Exhibits 10 and 12*.

96.     Wells Fargo failed to comply with 12 U.S.C. § 2605(k)(1)(C) in failing to take timely action to respond to Plaintiffs regarding mortgage loan problems in relation to each of the NOEs, which is a standard servicer duty.

97.     Wells Fargo failed to comply with 12 U.S.C. § 2605(k)(1)(E) by neglecting its obligations pursuant to 12 C.F.R. § 1024.35(e) for each of the NOEs.

98.     Wells Fargo's failure to properly respond to each of the NOEs constitutes at least two (2) clear, separate, and distinct violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(k)(1)(C) and (E), one such violation for each of the NOEs to which Wells Fargo failed to properly respond.

99.     Wells Fargo's failure to correct the errors noticed through the NOEs or failure to otherwise timely and properly respond to the same directly and proximately caused the Plaintiffs to suffer actual damages, including remaining unable to properly file their taxes from 2015 onward, being exposed to tax liability for the Settlement Payment despite those funds still functionally being held by Wells Fargo, and suffering extreme emotional distress.

100.    Wells Fargo's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiffs' rights.

101.    As a result of Wells Fargo's actions, Wells Fargo is liable to Plaintiffs for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

102.    Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT THREE:
## BREACH OF CONTRACT

103.    Plaintiffs restate and incorporate their statements and allegations contained in paragraphs 1 through 57 in their entirety, as if fully rewritten herein.

104.    The Settlement is a contract between the Parties. *See Exhibit 2*.

105.     Wells Fargo breached the Agreement by failing to disburse the Settlement Payment to Plaintiffs in a timely manner. *See Exhibits 1.*

106.     Wells Fargo breached the contract in bad faith which is evidenced Wells Fargo's failure to take to correct its breach despite repeated notice of the same through the NOEs and otherwise. *See See Exhibits 7, 9, 10, and 12*.

107.     As pled, *supra*, Plaintiffs have been harmed by, and continue to suffer from harm resulting from Wells Fargo's breach of the Settlement by remaining unable to properly file their taxes from 2015 onward, being exposed to tax liability for the Settlement Payment despite those funds still functionally being held by Wells Fargo.

108.     In addition, Wells Fargo's intentional and outrageous conduct has caused Plaintiffs to suffer severe emotional distress driven by fear and uncertainty in their financial well-being and their obligations which has resulted in loss of sleep, anxiety, depression, embarrassment, significant conflict in their marital relationship, and other significant harm.

109.     Plaintiffs' extreme emotional distress is a foreseeable result of Wells Fargo's breach of the Settlement.

110.     As a result of Wells Fargo's actions, Wells Fargo is liable to Plaintiffs for actual damages as further alleged, *supra*, as well as reasonable attorneys' fees and costs.

## COUNT FOUR:
## VIOLATION OF THE ILLINOIS FRAUD ACT, 815 ILCS 505/2

111.     Plaintiffs restate and incorporate their statements and allegations contained in paragraphs 1 through 57 in their entirety, as if fully rewritten herein.

112.     The Illinois Fraud Act at 815 ILCS 505/2, states, in relevant part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of

any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact... in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

113. The Illinois Fraud Act at 815 ILCS 505/2, states, in relevant part:

Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion, may award actual economic damages or any other relief which the court deems proper.

114. Wells Fargo violated the Illinois Fraud Act, specifically 815 ILCS 505/2, by engaging in an unfair and deceptive act or practice by using fraud, deception, and misrepresentation in their attempts to wrongfully breach the Settlement upon which Plaintiffs had dutifully performed and to subject them to tax liability for funds owed to Plaintiffs, but not disbursed, as further described *supra*.

115. Wells Fargo's conduct occurred during the course of trade or commerce.

116. Wells Fargo, through its conduct, intended that Plaintiffs would rely on its misrepresentations about the Settlement and related incorrect versions of IRS Forms 1098 and 1099.

117. Wells Fargo's conduct, as detailed, *supra*, constitutes unfair conduct under the Illinois Fraud Act.

118. Wells Fargo's unfair and deceptive conduct was immoral, unethical, unscrupulous and oppressive, especially in that Wells Fargo was, at all times relevant, in a position of strength in relation to Plaintiffs'.

119.    Wells Fargo owed Plaintiffs a duty of good faith and fair dealing. Wells Fargo owed Plaintiffs a fiduciary duty as servicer. Wells Fargo had discretion with respect to its handling of the Settlement.

120.    Wells Fargo's conduct violates public policy, including, RESPA, because, as detailed *supra*, Wells Fargo used false and deceptive representations in connection with its collection of the Loan and administration of the Settlement.

121.    As pled, *supra*, Plaintiffs have been harmed by, and continue to suffer from harm resulting from, Wells Fargo's unfair and deceptive practices in making misrepresentations described herein.

122.    In addition, Wells Fargo's intentional and outrageous conduct has caused Plaintiffs to suffer severe emotional distress driven by fear and uncertainty in their financial well-being and their obligations which has resulted in loss of sleep, anxiety, depression, embarrassment, significant conflict in their marital relationship, and other significant harm.

123.    As a result of Wells Fargo's actions, Wells Fargo is liable to Plaintiffs for actual damages as further alleged, *supra*, as well as reasonable attorneys' fees and costs.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Andy Weiss a.k.a. Andrew Weiss and Betty Weiss pray that this Court grant judgment in their favor and against Defendant Wells Fargo Bank, N.A., and award each of them the following:

A.    Actual damages from Wells Fargo Bank, N.A. in an amount to be determined at trial for the allegations contained in Counts One through Four;

B.   Statutory damages from Wells Fargo Bank, N.A. in the amount of Two Thousand Dollars ($2,000.00) per each violation contained in Counts One and Two for a total of at least Ten Thousand Dollars ($10,000.00);

C.   Statutory damages from Wells Fargo Bank, N.A. as to Count Four;

D.   Additional damages from Wells Fargo Bank for Plaintiffs' extreme emotional distress as to Count Three;

E.   Reasonable attorneys' fees and costs from Wells Fargo Bank as to Counts One through Four; and,

F.   Such other relief which this Court may deem appropriate.

Respectfully submitted:

/s/ Marc E. Dann
Marc E. Dann (Ohio Bar No. 0039425)
DannLaw
P.O. Box 6031040
Cleveland, OH 44103
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

*Co-Counsel for Plaintiffs Andy Weiss a.k.a. Andrew Weiss and Betty Weiss*

/s/ Penelope N. Bach
Penelope N. Bach, 6284659
Paul M. Bach, 6209530
Bach Law Offices, Inc.
P.O. Box 1285
Northbrook, Illinois 60062
Phone: (847) 564-0808
Facsimile: (847) 564-0985
pnbach@bachoffices.com

*Co-Counsel for Plaintiffs Andy Weiss a.k.a. Andrew Weiss and Betty Weiss*

## **JURY DEMAND**

Plaintiffs Andy Weiss a.k.a. Andrew Weiss and Betty Weiss hereby respectfully demand

a trial by jury on all such claims that may be so tried.

*/s/ Marc E. Dann*
Marc E. Dann (Ohio Bar No. 0039425)
DannLaw
*Co-Counsel for Plaintiffs Andy Weiss a.k.a.*
*Andrew Weiss and Betty Weiss*

*/s/ Penelope N. Bach*
Penelope N. Bach, 6284659
Bach Law Offices, Inc.
*Co-Counsel for Plaintiffs Andy Weiss a.k.a.*
*Andrew Weiss and Betty Weiss*