IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDY WEISS and BETTY WEISS, ) | |
| ) | |
| *Plaintiffs,* ) | |
| ) | No.  19 C 4947 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| WELLS FARGO BANK, N.A, ) | |
| ) | |
| *Defendant.* ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Andy and Betty Weiss own a home subject to a note and mortgage serviced by Wells Fargo Bank, N.A.  In March 2018, the Weisses entered into a settlement agreement with Wells Fargo pertaining to their home loan.  Since that time, they have sent multiple written communications to Wells Fargo, either asking questions about their loan or asserting that loan-related errors have occurred.  Unsatisfied with the responses (or lack thereof) that they have received, the Weisses filed suit, alleging multiple statutory and regulatory violations based on Wells Fargo's failure to timely and completely respond to the communications.  The Weisses also allege that Wells Fargo breached the settlement agreement and violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").

Wells Fargo has moved to partially dismiss Counts One and Two, and to dismiss Count Four in its entirety. (Dkt. 16). For the reasons stated herein, Wells Fargo's motion is granted in part and denied in part.

## BACKGROUND

The following factual allegations are taken from the Weisses' complaint and are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

The Weisses own a home in Skokie, Illinois. (Dkt. 1 ¶ 1). The Weisses executed a note and mortgage relating to their home, serviced by Wells Fargo. (*Id.* at ¶ 3).

In August 2012, the Weisses filed a Chapter 13 bankruptcy petition. (*Id.* at ¶ 15). They received a discharge in June 2017 and the bankruptcy was subsequently closed. (*Id.* at ¶ 17). In the course of the bankruptcy proceeding, the Weisses filed an adversary action against Wells Fargo. (*Id.* at ¶ 16). In March 2018, the parties entered into a settlement agreement regarding that proceeding. (*Id.* at ¶ 18). The settlement agreement required Wells Fargo to take various actions, including applying a credit to the loan and refunding certain payments to the Weisses. (*Id.* at ¶ 19; Dkt. 1-2). Specifically, Wells Fargo agreed to pay $12,907.57 to the Weisses ("the settlement payment"). (Dkt. 1 ¶ 19; Dkt. 1-2).

Although Wells Fargo tendered the settlement payment to its counsel, counsel has not disbursed the funds to the Weisses or the Weisses' counsel despite requests to do so. (Dkt. 1 ¶ 24). This failure to pay appears to be related to an attorney's lien

filed by the Weisses' former bankruptcy counsel, Merle L. Royce, although the Weisses allege that the lien is invalid. (*See id.* at ¶¶ 21–23).[1]

In August 2018, the Weisses sent three Requests for Information ("RFIs") to Wells Fargo. (*Id.* at ¶¶ 25–28). When Wells Fargo did not respond, the Weisses sent Wells Fargo a Notice of Error ("NOE") in October 2018. (*Id.* at ¶¶ 29–31). Unsatisfied with Wells Fargo's subsequent response, the Weisses sent an additional NOE to Wells Fargo in February 2019. (*Id.* at ¶¶ 34–42). Although Wells Fargo responded, the Weisses again found the response unsatisfactory. (*Id.* at ¶¶ 46–47). The specifics of these RFIs and NOEs are recounted, as relevant, in the discussion section below.

As a result of Wells Fargo's conduct, the Weisses have filed the instant suit. In it, they allege that Wells Fargo failed to properly respond to the RFIs (Count One), failed to properly respond to the NOEs (Count Two), breached the settlement agreement (Count Three), and violated the ICFA (Count Four).

## **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign Cty.,*

---

[1] Whether Royce must be joined in this action is the subject of a currently stayed Motion for Joinder. (*See* Dkt. 18, 22).

*Ill.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

### A. Count One: RFIs

In Count One, the Weisses allege that Wells Fargo failed to properly respond to the RFIs in accordance with the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601–2617, and its implementing regulations, specifically 12 CFR § 1024.36. "RESPA is a consumer protection statute that regulates the real estate settlement process, including servicing of loans" and it "imposes a number of duties on lenders and loan servicers." *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 680 (7th Cir. 2011). Wells Fargo argues that certain of the inquiries in the RFIs were not proper requests under RESPA, and thus the Weisses may not bring a RESPA claim as to those inquiries.

Initially, Wells Fargo argued that it need not have answered a number of the Weisses' RFI requests because those requests did not pertain to: (1) an account error or (2) loan servicing. 12 U.S.C. § 2605(e); *see also Perron on behalf of Jackson v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 857 (7th Cir. 2017) (noting that RESPA "covers only written requests alleging an account error or seeking information relating to loan servicing"). In response, however, the Weisses point out that those limitations apply only to a qualified written request ("QWR"), which is not the same

as an RFI, although there can be overlap between the two. *See* 12 C.F.R. § 1024.36 (noting that a qualified written request may be treated the same as an RFI, implying that the two are not synonymous). As the district court in *Messina v. Green Tree Servicing, LLC*, aptly put it:

> While there is significant overlap between QWRs and notices of errors and requests for information, the terms are not synonymous. The CFPB has made this clear in its official interpretation of the regulations: "A qualified written request is just one form that a written notice of error or information request may take. Thus, the error resolution and information request requirements in §§ 1024.35 and 1024.36 apply as set forth in those sections irrespective of whether the servicer receives a qualified written request." 12 C.F.R. § 1024, Supp. I (official CFPB interpretations). This is also clear from comparing the plain language of the QWR requirements (requiring a statement of reasons) with those for notices of error (requiring the borrower to identify the error).

210 F. Supp. 3d 992, 1007 (N.D. Ill. 2016).[2]

Unlike a QWR, the only limitations on an RFI are that it cannot request information that is duplicative, confidential, proprietary, privileged, irrelevant, overbroad, or unduly burdensome, and that the RFI cannot be untimely. 12 C.F.R. § 1024.36(f). Wells Fargo appears to concede this, as in its reply to the motion to dismiss it has reduced the number of RFI requests it says must be dismissed. (Dkt. 24 at 1-2).

Given Wells Fargo's concession and the fact that RFIs and QWRs do not have the same servicing-based limitations, the Court addresses only those RFI requests that Wells Fargo continues to press in its reply to the motion to dismiss.

---

[2] The quoted material within this passage comes from the Consumer Financial Protection Bureau's comments to 12 CFR § 1024 – Real Estate Settlement Procedures Act (Regulation X), Comment for 1 024.31 – Definitions, *available at* https://www.consumerfinance.gov/policy-compliance/rulemaking/regulations/1024/Interp-31/.

First, request 6 of the Weisses' first RFI requested the current property value and any documents relied on to determine that value, such as an appraisal. (Dkt. 1-3). Wells Fargo argues that this is essentially demanding that an appraisal of the property be conducted—a request that has to do with information about *the property*, not about *the loan*. It therefore did not constitute an RFI.

Yet, from the face of the complaint and the first RFI alone, it is not apparent that the Weisses were asking for any new information pertaining to the property value. Rather, their request for the "current property value" could be interpreted as the Bank's continuing valuation of the home, for example, based on a past appraisal or other documents. Wells Fargo has not explained why such information would not be relevant to the loan. The cases they cite refer to the fact that appraisals and the like do not have to do with servicing of the loan, which, as already stated, is not the limitation here. *See* Dkt. 16 at 5 (collecting cases); *see e.g. Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 418 (D. Md. 2018) (noting that requests for copies of appraisals "do not relate to servicing, and, therefore, do not constitute a valid QWR.").

Second, Wells Fargo challenges request 3 of the third RFI, which requests a "complete pay-off statement." (Dkt. 1-5). The Court agrees with Wells Fargo that 12 C.F.R. § 1024.36(a) specifically states that "[a] request for a payoff balance need not be treated by the servicer as a request for information." The Weisses therefore may not argue that the failure to respond to request 3 of the third RFI constituted a violation of 12 C.F.R. § 1024.36. Request 3 need not be considered to be an RFI and therefore does not fall within the protections of 12 C.F.R. § 1024.36.

**B. Count Two: NOEs**

In Count Two, the Weisses allege that Wells Fargo failed to timely and properly respond to their two NOEs, in violation of RESPA and its implementing regulations, 12 U.S.C. §§ 2605(k)(1)(C), (E), and 12 CFR § 1024.35.

Wells Fargo asserts two issues with Count Two. First, Wells Fargo points out that the first NOE raises as an error Wells Fargo's failure to respond to the RFIs. (*See* Dkt. 1-7). The failure to respond to an RFI, Wells Fargo argues, cannot itself be considered an error under RESPA. The Weisses argue in response that, even if Wells Fargo did not believe it needed to provide a substantive response to this alleged error, it was still obligated to respond to the Weisses telling them as much.

This appears to be a matter of semantics. The primary error the Weisses asserted in the first NOE is an error with escrow and interest payments, and the remedy they seek in the NOE is "a refund of any funds being held in escrow" and a "corrected 1098." (Dkt. 1-7). The Weisses did, however, also note in the NOE that they had submitted 3 RFIs that were not responded to. (Dkt. 1-7). The Court agrees with Wells Fargo that an NOE cannot be used simply to assert the failure to respond to an RFI. *See* 12 C.F.R. § 1024.35 (defining what errors are covered, which does not include the failure to respond to a RFI); *see also Smith v. Wells Fargo Bank, N.A.*, No. 18 CV 7979, 2019 WL 2189285, at *5 (N.D. Ill. May 21, 2019) ("Lastly, the failure to properly respond to notices of error is not itself a covered error. It does not fit into any of the listed categories of covered error, nor does it relate to the servicing of the loan to fit within the catch-all category.") The first NOE, however, does not solely

raise the failure to respond to the prior RFIs—it is primarily directed to correcting the escrow and interest issues. That being said, to the extent the Weisses seek to recover specifically for Wells Fargo's failure to respond to their three RFIs, they may not state a claim for this under 12 CFR § 1024.35 (by way of 12 U.S.C. §§ 2605(k)(1)(C), (E)) because the failure to respond to the RFIs does not constitute an "error" that falls within the protections of the regulation.[3]

The second issue Wells Fargo raises with Count Two is the third error asserted in the second NOE, which is that:

> Wells Fargo & Company has issued a 1099 in 2018 to the borrower in the amount of $12,907.57. To date these funds have not been received by the borrower and are in the possession of Wells Fargo's local counsel. The 1099 must be retracted from the IRS as funds have not been given to the borrower.

(Dkt. 1-10). Wells Fargo argues that this error relates to the settlement payment agreed to in the adversary proceeding. It is not, Wells Fargo says, an error related to the servicing of the loan that falls within RESPA. The Weisses respond that the settlement pertained to a servicing issue and therefore the failure to pay this amount should still be considered a servicing issue. The Court agrees with Wells Fargo that this alleged error was not an error for the purposes of 12 CFR § 1024.35 because it did not directly pertain to servicing of the loan. The NOE itself acknowledges that Wells Fargo disbursed the funds to its counsel. While the fact that the funds were

---

[3] As to the Weisses' argument that Wells Fargo should still have responded to all errors alleged in the NOEs, this Court disagrees. Wells Fargo would need to respond if it determined that the NOE was duplicative, overbroad, or untimely pursuant to 12 C.F.R. § 1024.35(g). But if the asserted error did not fall within the definition of an error under 12 C.F.R. § 1024.35 at all, the requirements of that regulation, including the requirement to respond, would not apply.

owed to the Weisses at all may be related to the servicing of their loan, counsel's failure to disburse the funds to the Weisses is a legal issue outside the scope of servicing. Likewise, the failure to correct a 1099 form based on whether the funds were in fact disbursed to the Weisses is too far removed from the issues underlying the settlement so as to be considered a servicing issue. *See Perron,* 845 F.3d at 857 (explaining the limited definition of "servicing" as defined in 12 U.S.C. § 2605(i)(3)). Therefore, the failure to correct the 1099 form does not constitute an error that falls within the protections of 12 CFR § 1024.35.

### C. Count Four: ICFA Claim

Finally, Wells Fargo argues that the Weisses' ICFA claim should be dismissed because it is duplicative of their breach-of-contract claim. "A breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Avery v. State Farm Mut. Auto. Ins. Co.,* 835 N.E.2d 801, 844 (Ill. 2005); *see also Greenberger v. GEICO Gen. Ins. Co.,* 631 F.3d 392, 399 (7th Cir. 2011) ("When allegations of consumer fraud arise in a contractual setting, the plaintiff must prove that the defendant engaged in deceptive acts or practices distinct from any underlying breach of contract.").

In Count Four, the Weisses expressly allege that Wells Fargo violated the ICFA, 815 ILCS § 505/2, by engaging in misconduct "in their attempts to wrongfully breach the Settlement." (Dkt. 1 ¶ 114). They allege no facts that constitute unfair and deceptive acts separate and apart from the fact that the acts were breaches of

the underlying loan and settlement. As such, the Weisses have failed to state a valid ICFA claim in Count Four.

## CONCLUSION

The Court grants Wells Fargo's partial motion to dismiss Count One on the limited grounds that the Weisses may not state a violation of 12 C.F.R. § 1024.36 for the failure to respond to a request for a payoff statement. The Court otherwise denies Wells Fargo's motion to dismiss Count One. The Court grants Wells Fargo's partial motion to dismiss Count Two on the limited grounds that the Weisses may not assert as an error under 12 C.F.R. § 1024.35 the failure to respond to RFIs or the failure to correct a 1099 reflecting the non-payment of the settlement payment. Count Two otherwise stands. The Court grants Wells Fargo's motion to dismiss Count Four in its entirety on the grounds that it is impermissibly duplicative of the breach-of-contract claim. This partial dismissal regarding Counts One, Two, and Four is granted without prejudice The Weisses are granted leave to amend their complaint consistent with this Opinion, if possible, within 21 days of the filing of this Opinion.

_____
Virginia M. Kendall
United States District Judge

Date: January 29, 2020